UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TETRA TECH EC, INC., <br> Plaintiff, <br> v. <br> CH2M HILL INC., et al., <br> Defendants. | Case No. 20-cv-04704-JD <br><br> **ORDER RE MOTION TO DISMISS** <br> Re: Dkt. No. 59 |

This order resolves defendants' motion to dismiss Tetra Tech EC, Inc.'s first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 59. The Court dismissed Tetra Tech's claims for negligence, negligent misrepresentation, and equitable indemnification for failure to state a claim, and granted Tetra Tech leave to amend. Dkt. No. 52.

In the amended complaint, Tetra Tech has re-alleged claims for negligence and equitable indemnification, and added new claims for inducing breach of contract, intentional interference with contractual relations, and unfair business practices under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200. Dkt. No. 55 (FAC) ¶¶ 99-144. Defendants seek dismissal of all five claims. Dkt. No. 59. The parties' familiarity with the record is assumed, and dismissal is granted in part.

**DISCUSSION**

**I.   NEGLIGENCE**

The negligence claim is dismissed because Tetra Tech still has not plausibly alleged that defendants owed them a duty of any sort. There can be no claim of negligence without a duty of care running from defendants to plaintiff, and "[w]hether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196-97 (9th Cir. 2001) (quotations and citation omitted).

Given that a major theme of the FAC is that defendants and Tetra Tech are competitors in the field of environmental remediation, the likelihood that defendants owed a duty of any kind to Tetra Tech is immediately doubtful. Tetra Tech suggests a duty can be found because the "end and aim" of defendants' contract with the Navy "was to achieve a benefit for" Tetra Tech. FAC ¶ 123. This conclusory and rather counterintuitive allegation runs counter to common sense, and is directly at odds with Tetra Tech's factual allegations that "the United States Navy hired defendants to evaluate environmental data collected by Tetra Tech EC, Inc. at Hunters Point Naval Shipyard and to perform confirmation surveys." FAC ¶ 1; *see also id*. ¶ 48 ("CH2M Hill . . . was selected as the primary contractor to evaluate plaintiff's data."). The FAC also alleges that defendants were hired after it was discovered that "certain individuals" working for Tetra Tech likely "had not collected soil samples from the locations identified on chain-of-custody records." *Id*. ¶¶ 31, 47. As the FAC alleges, "[i]n 2017, two former employees of [Tetra Tech] pleaded guilty to destruction, alteration, or falsification of records in violation of 18 U.S.C. § 1519, for their roles in the irregular sampling in 2012." *Id*. ¶ 37.

These are not circumstances that plausibly demonstrate the basis of a duty owed by defendants to Tetra Tech. Defendants' job under the contract with the Navy "was to evaluate and confirm plaintiff's data if the data are reliable." *Id*. ¶ 122. To put a finer point on it, defendants were hired by the Navy to make sure that Tetra Tech's data was still "reliable," *id*., after the "irregular sampling" issues that led to federal criminal convictions of two Tetra Tech former employees, *id*. ¶ 37.

It does not follow from these facts that the "end and aim" of defendants' contract with the Navy was "to achieve a benefit for plaintiff." *Id*. ¶ 123. To the contrary, allegations in the FAC show that defendants were hired by the Navy to "evaluate [Tetra Tech's] information," and the Court finds that defendants owed no duty of care to the target of their evaluation, *i.e.*, Tetra Tech, with whom defendants' relationship was "investigatory if not antagonistic." *Glenn K. Jackson*, 273 F.3d at 1199-1200.

2

Consequently, the negligence claim is dismissed. The Court declines to extend another opportunity to amend this claim, as it is not warranted. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

## II.   EQUITABLE INDEMNIFICATION AND/OR CONTRIBUTION

The claim for equitable indemnification and/or contribution is also dismissed without leave to amend, for failure to fix the deficiencies the Court previously identified. Dkt. No. 53. "[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement." *Christian v. Cnty. of L.A.*, 176 Cal. App. 3d 466, 471 (1986). There has been no payment, nor any judgment or settlement at this time. *See*, *e.g.*, FAC ¶¶ 133-134 (seeking indemnity "[t]o the extent Plaintiff is held liable"). Moreover, Tetra Tech still does not plausibly allege that it and defendants are likely to be found "jointly and severally liable to" any third party. *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal. App. 4th 848, 852 (2004). Tetra Tech may request to revisit this claim at a later stage of the case, as warranted by the circumstances.

## III.   UCL

Actions under the UCL are actions in equity. "Damages such as those in contract or tort cases are not available, and the remedies 'are generally limited to injunctive relief and restitution.'" *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1070-71 (N.D. Cal. 2020) (citations omitted).

The UCL claim is brought under the "unfair" practices prong of the statute on the alleged basis that defendants "engaged in unfair business acts or practices by conducting their data evaluation in a manner designed to cause the Navy to conclude Plaintiff's data were unreliable." FAC ¶ 141. Tetra Tech alleges that it suffered "economic and competitive injuries, including unpaid Navy invoices, loss of business, and other losses of money and property" as a result. *Id.* ¶ 143. It "seeks declaratory relief to remedy defendants' unfair business acts and practices." *Id.* ¶ 144.

None of this plausibly states a UCL claim. As a general principle, hardball competition between market rivals, and a desire of one company to seize the business of another, are perfectly

3

acceptable forms of conduct so long as they are within the bounds of the law.  For purposes of the unfairness prong of the UCL -- which is the only prong Tetra Tech has invoked in its FAC -- this means that conduct short of a violation of the spirit of the antitrust laws is not actionable.  *See CZ Services, Inc. v. Express Scripts Holding Co.*, No. 3:18-cv-04217-JD, 2020 WL 4368212, at *8 (N.D. Cal. Jul. 30, 2020) ("In situations involving a claim of unfairness between competing businesses, such as this one, the plaintiff must make out an incipient violation of the antitrust laws. *Cel-Tech*, 20 Cal. 4th at 187.  CZ Pharmacies has not established an incipient violation of the Sherman or Clayton Acts, or other body of antitrust law.").

The FAC does not allege any facts that might add up to an incipient antitrust violation by defendants.  The declaratory relief request is also not contemplated by the UCL.  The claim is dismissed with leave to amend.

## IV.   INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

For inducing breach of contract and for intentional interference with contractual relations, the Court declines defendants' suggestion that these claims should be subject to a one-year statute of limitations and an "actual malice" pleading requirement because the tort claims actually "sound in defamation." Dkt. No. 59 at 10-12, 14-15.  As stated in a case cited by defendants themselves, *see* Dkt. No. 64 at 8, torts are frequently "accomplished 'by words,'" but that does not mean that "all claims in which a plaintiff is harmed by another's speech fall[] under the rubric of defamation." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 226 (S.D.N.Y. 2013) (citation omitted).  Here, it cannot fairly be said that Tetra Tech is complaining only about the publication of "injurious falsehood[s]" about itself.  *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234, 244 (1986).  Tetra Tech has alleged that defendants, as "direct competitors of plaintiff, developed biased, arbitrary, and unscientific tests and methods not based on applicable contracts or environmental standards to evaluate plaintiff's data," and they "applied these flawed tests and methods to undermine the reliability of plaintiff's data based on findings that 'potential' data manipulation or falsification occurred during plaintiff's work at the site." FAC ¶ 1.  To be sure, there is an expressive component to the conduct that Tetra Tech challenges (*e.g.*, defendants expressed their

4

findings in words, and communicated them with words to the Navy), but that component does not mean that Tetra Tech is alleging only defamation claims subject to the strict requirements that apply to such claims.

Defendants say that the official proceeding privilege in California Civil Code Section 47(b) applies here and bars Tetra Tech's claims, Dkt. No. 59 at 12, but the relevance of the privilege is not evident in the FAC's allegations or defendants' arguments. Defendants point to *Espinoza v. City of Imperial*, 2008 WL 2397430, at *8 (S.D. Cal. June 10, 2008), for the proposition that "[a]ny doubt as to whether the privilege applies is resolved in favor of applying it." Dkt. No. 59 at 13. This is inapposite because *Espinoza* applied the privilege to the psychological examination of a police officer based on the "unique position of trust" police officers occupy in our society, and the fact that "California courts have recognized public policy concerns associated with law enforcement personnel." 2008 WL 2397430, at *8. Nothing of the sort is alleged here, and defendants did not persuasively show otherwise that their communications to the Navy about their ongoing evaluation of Tetra Tech's data, including in draft reports, should be treated as "publication[s]" made in an "official proceeding authorized by law." Cal. Civ. Code § 47(b)(3).

So too for defendants' suggestion that they are "shielded by federal contractor defamation immunity." Dkt. No. 59 at 13-14. They refer to 28 U.S.C. § 2680(h), which is a statutory exception to the United States' waiver of immunity under the Federal Tort Claims Act. The case on which defendants rely to argue that this same immunity extends to government contractors, *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442 (4th Cir. 1996), in fact shows its limitations. *See* Dkt. No. 59 at 13. In *Mangold*, the Fourth Circuit first observed that whether the discretionary function exception immunity "also extends to persons in the private sector who are government contractors participating in official investigations of government contracts is less clear." 77 F.3d at 1447. *Mangold* "appl[ied] such immunity only insofar as necessary to shield statements and information, whether truthful or not, given by a government contractor and its employees *in response to queries* by government investigators engaged in an official investigation." *Id*. at 1449

(emphasis in original). That narrow, out-of-circuit holding does not fit the facts of this case, and "federal contractor defamation immunity" is denied.

Defendants' arguments based on the federal enclave doctrine are also non-starters. Defendants say that "most of the claims are also precluded by the enclave doctrine, which provides that claims arising in a federal enclave like Hunters Point are governed by state law as it existed when the enclave was created -- here, in 1940." Dkt. No. 59 at 1. But as the Court concluded in a related case, determining the scope of how the federal enclave doctrine might apply in a case is a matter of time (*i.e.*, when the United States accepted jurisdiction and when its jurisdiction became exclusive), as well as real estate (*i.e.*, for which of the many different parcels that make up the Hunters Point Naval Shipyard these requirements were met). *See Bayview Hunters Point Residents v. Tetra Tech EC, Inc.*, Case No. 19-cv-01417-JD, Dkt. No. 105 (N.D. Cal. Mar. 31, 2021) at 4. The Court noted in the order that defendants have "the burden of persuasion as the moving party," so it was on them to satisfactorily show, as a matter of time and geography, "the boundaries of exclusive federal jurisdiction for the HPNS." *Id.* at 3. Defendants have made no such showing here.

For the inducing breach of contract claim, the only remaining argument is that the claim is time-barred under a two-year statute of limitations. Dkt. No. 59 at 8. The success of that argument depends on the Court implying into Tetra Tech's contract with the Navy, a right by the Navy to "terminate the contract at any time for any reason." *Id*. While defendants argue that such rights are "standard in federal contracts" and are "implied into such contracts as a matter of law even if not expressly provided for," *id*., no such provision is pleaded in the complaint and the contract itself is not before the Court on this pleadings motion. The Court consequently finds on this record that the claim is timely, as Tetra Tech has pleaded at a minimum that "[i]n December 2019, the Navy unilaterally suspended work on Contract N62473-10-D-0809, Task Order 0007, making further performance by TtEC under the contract impossible," FAC ¶ 87, and this suit was filed on July 14, 2020. Dkt. No. 1. Dismissal is denied for Tetra Tech's claim for inducing a breach of contract.

Dismissal is also denied for Tetra Tech's intentional interference with contractual relations claim. The argument for that claim is that Tetra Tech has failed to plead an "independently wrongful act" under *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020). Dkt. No. 59 at 8. That is a fair reading of the FAC, but *Ixchel Pharma* went to some length to say that "tortious interference with *at-will* contracts requires independent wrongfulness." 9 Cal. 5th at 1137 (emphasis added). The complaint there alleged that the contract in question "authorized Forward to terminate the agreement 'at any time' so long as it provided notice to Ixchel 60 days in advance," and the record also indicated that "neither party contest[ed] that the cooperation agreement is a valid contract that Forward was entitled to terminate at will." *Id*. at 1138, 1140. The "at will" element is not clearly presented in the FAC here; Tetra Tech did not expressly allege that its contract with the Navy was an at-will contract. And Tetra Tech disputes this element. *See* Dkt. No. 63 at 7 (stating that "an at-will contract . . . is not at issue here."). Since this element is not plainly visible on the face of the complaint, the Court declines to dismiss the interference claim at this pleadings motion stage. The intentional interference claim may go forward, with the understanding that the "at will" element, if established, may eventually warrant a dismissal.

## CONCLUSION

For the dismissed UCL claim, Tetra Tech may file by February 11, 2022, a second amended complaint that is consistent with this order. No new claims or parties may be added without the Court's prior consent.

**IT IS SO ORDERED.**

Dated: January 27, 2022

_____
JAMES DONATO
United States District Judge