UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TETRA TECH EC, INC., <br><br>Plaintiff, <br><br>v. <br><br>CH2M HILL INC., et al., <br><br>Defendants. | Case No. 20-cv-04704-JD <br><br>**ORDER RE SUMMARY JUDGMENT** |

The order of dismissal left plaintiff Tetra Tech EC Inc. with the first and second contract claims to litigate. *See* Dkt. No. 91. Now that the evidentiary record is fully developed, summary judgment is granted in favor of defendants on these claims. *See* Dkt. No. 141 (summary judgment motion).

The parties' familiarity with the record and legal standards is assumed. In pertinent summary, Tetra Tech's first claim is for inducing a breach of contract, and the second claim is for intentional interference with contractual relations. *See* Dkt. No. 55 ¶¶ 99-119. Each claim concerns the "contracts and task orders for environmental remediation at Hunters Point" that were entered into by Tetra Tech and the United States Navy, "including Contract N62472-10-D-0809, Task Orders 0002, 0007, and 0012, and Contract N62473-12-D-2006, Task Order 004." *Id*. ¶¶ 100, 111.

The record demonstrates, without dispute, that the Navy contracts incorporated multiple clauses from the Federal Acquisition Regulation (FAR), including terms that permitted the government to "terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." FAR 52.249-2(a); *see* Dkt. No. 133, Ex. 1 at ECF p. 54 (D-0809 contract incorporating by reference FAR 52.249-2); Dkt. No. 133, Ex. 2 at ECF p. 126 (D-2006 contract doing same). This

FAR clause, and others like it, give the government the contractual right to terminate for convenience. *See Aspic Engineering and Construction Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1167-68 (9th Cir. 2019) ("FAR § 52.249-2 sets forth the procedure to be used in the event of termination for convenience. 48 C.F.R. § 52.249-2.").

In effect, the "at will" element of the relevant contracts has been established. *See* Dkt. No. 91 at 7. Consequently, for each of Tetra Tech's claims, it must show that defendants engaged in an "independently wrongful act" above and beyond the ostensible disruption of the contract. *Id*. "California has traditionally recognized two economic relations torts: interference with the performance of a contract and interference with a prospective economic relationship," and both of Tetra Tech's causes of action are claims for "[t]ortious interference with contractual relations," which is a tort that arises when defendants "induce a breach or disrupt[]" a "contractual relationship." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1140-41 (2020) (internal citations omitted).[1] When, as here, a plaintiff alleges tortious interference with a contract that is "terminable at will," the plaintiff must also plead and prove an "independently wrongful act" beyond the interference itself. *Id*. at 1140.

At the pleadings motion stage, the Court concluded that Tetra Tech had not alleged an "independently wrongful act" under *Ixchel Pharma*, but let the contract claims go forward because there were some factual questions with respect to the "at will" nature of the Navy contracts. *See* Dkt. No. 91 at 7. Tetra Tech's attempt to re-argue the missing element of an independently wrongful act in opposition to summary judgment is a non-starter. *See Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) (plaintiff's tolling argument in opposition to summary judgment insufficient where plaintiff had failed to include tolling allegation in pleadings). This is enough to grant judgment in favor of defendants.

Even so, the Court notes for the sake of completeness that Tetra Tech did not "establish the . . . presence of a genuine dispute" that defendants engaged in an independently wrongful act as required under *Ixchel Pharma*. Fed. R. Civ. P. 56(c)(1)(B). Tetra Tech says that

---

[1] Both sides have looked to California law as the law governing Tetra Tech's claims. *See* Dkt. No. 148 at 16; Dkt. No. 141 at 14-15. The Court does the same.

1  misrepresentation was the independently wrongful act.  *See* Dkt. No. 148 at 21-22.  This is a

2  completely new factual and legal theory never mentioned in the complaint.  *See* Dkt. No. 55.  It is

3  also analytically unsound.  Tetra Tech suggests that "Defendants' evaluation of TtEC's data did

4  not scientifically support the recommendation of full rework for which the government used it.

5  Defendants knew this but nevertheless prepared findings that would allow the government to forge

6  ahead with its predetermined decision."  Dkt. No. 148 at 21; *see also id*. at 22 ("Defendants made

7  changes to their evaluation to ensure they fit the government's desired conclusion that TtEC had

8  potentially falsified data.").  But Tetra Tech's proffered evidence along these lines fails to

9  establish that defendants engaged in the independently wrongful act of "negligent or fraudulent

10  misrepresentation in its dealings with the government."  *Id*. at 21.  This is because Tetra Tech has

11  already posited that the government pursued a predetermined course of action, and so the

12  government could not have acted in reliance on defendants' alleged misrepresentations and the

13  misrepresentations were not a substantial factor in causing the harm Tetra Tech complains of.  As

14  Tetra Tech acknowledges, these are required elements of a misrepresentation claim.  *See id*. at 21-

15  22 (citing *Perlas v. GMAC Mortgage, LLC*, 187 Cal. App. 4th 429, 434 (2010) and *Apollo Capital*

16  *Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)).  Overall, Tetra

17  Tech did not file anything that might have proved a trial was necessary to resolve a genuine

18  dispute about misrepresentation.

19  So too for Tetra Tech's comment that defendants "appear to have committed a False

20  Claims Act violation by their failure to submit a statement regarding organizational conflicts of

21  interest as required by their contract."  Dkt. No. 148 at 23-24.  Under *Ixchel Pharma*, 9 Cal. 5th at

22  1162, Tetra Tech had to show that defendants "interfered with [Tetra Tech's] at-will contract"

23  using "wrongful means."  Tetra Tech did not proffer any evidence indicating that defendants'

24  alleged FCA violation, which the Court underscores is merely Tetra Tech's characterization of

25  defendants' conduct, was tied in any way to the interference with the Navy contracts.  At best,

26  Tetra Tech says with respect to the FCA that defendants did not disclose alleged "organizational

27  conflicts of interest."  Dkt. No. 148 at 23.  Even if that were true, which has not been established,

28

3

Tetra Tech never plausibly explains how that might have been connected to the alleged disruption of the Navy contracts.

The lack of evidence raising a genuine dispute of fact about defendants' independently wrongful conduct forecloses the claims for tortious interference with a contractual relationship. The Court need not reach defendants' other arguments for summary judgment, including the statute of limitations. Dkt. No. 141.

Tetra Tech has asked that the Court defer a summary judgment ruling under Federal Rule of Civil Procedure 56(d) so that Tetra Tech could have more time to conduct discovery. Dkt. No. 148 at 24-25. The request is denied. This case has been litigated for several years, and Tetra Tech has had more than enough time to pursue discovery to its heart's content. In addition, Tetra Tech did not say what evidence was not reasonably available to it in the timeframe set for discovery in the scheduling orders.

Summary judgment is granted for defendants on Tetra Tech's remaining claims. The Court will enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: December 6, 2024

JAMES DONATO
United States District Judge